# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

TIMOTHY ALAN CONNELL,

    Plaintiff,

v.                                                     Case No. 3:22-cv-269-BJD-PDB

CENTURION MEDICAL, et al.,

    Defendants.

## ORDER

### I. Status

Plaintiff, Timothy Alan Connell, an inmate in the custody of the Florida Department of Corrections, initiated this action in the Southern District of Florida by filing a pro se Civil Rights Complaint (Doc. 1) under 42 U.S.C. § 1983 on February 28, 2022.[1] In the Complaint, Plaintiff names three Defendants – Centurion Medical Health Care (Centurion); Dade Correctional Institution Captain Thomas Coopman; and Florida State Prison (FSP) Medical Director Gonzales Espino. *Id.* On March 9, 2022, the Honorable Raag Singhal, United States District Judge, dismissed without prejudice Plaintiff's claims

---

[1] Because the Complaint does not contain a prison date stamp, the Court considers the filed date as the date of the certificate of service. Doc. 1 at 23.

against Coopman[2] and transferred to this Court the action and remaining claims against Defendants Centurion and Espino. *See* Doc. 3. Plaintiff alleges that Centurion and Espino have not provided adequate medical care for his severe ear injury, and he seeks injunctive relief and monetary damages. Doc. 1 at 4.

Before the Court are several motions. Both Defendants have moved to dismiss. *See* Doc. 29 (Centurion Mot.); Doc. 46 (Espino Mot.). And in compliance with the Court's directive (Doc. 52), Defendants supplemented their motions to dismiss with a summary printout of Plaintiff's grievance appeals (Doc. 55). Plaintiff filed several responses opposing the motions to dismiss (Docs. 34, 43, 47, 48, 49, 51, 59, 64); and he filed an opposition to Defendants' supplement (Doc. 56). Plaintiff also filed a Motion for Leave to file Amended Complaint (Doc. 41); a Motion to Supplement Motion for Leave to file Amended Complaint (Doc. 42); and a "Motion to Request Stay of Ruling on Defendants' Motions to Dismiss to Allow Plaintiff to Properly Exhaust All Administrative Remedies Available Due to Exceptional/Extraordinary Circumstances that Prevented Plaintiff from Exhausting" (Doc. 65). Finally,

---

[2] The claims against Defendant Coopman were dismissed without prejudice to Plaintiff refiling a new complaint against Defendant Coopman only challenging the events which took place in the Southern District of Florida. *See* Doc. 3.

Defendants filed a "Motion to Consolidate Related Cases Under Local Rule 1.07." *See* Doc. 54. The motions are ripe for review.

## II. Plaintiff's Complaint[3]

Plaintiff alleges that on July 29, 2019, while housed at Dade Correctional Institution, Captain Thomas Coopman used excessive physical force on him, resulting in Plaintiff suffering a severe ear injury. Doc. 1 at 9-10. Medical evaluated Plaintiff after the use of force, noticed his ear was bleeding, prescribed antibiotics, and ordered a follow-up in ten to fourteen days. *Id.* at 13. On September 14, 2019, medical again evaluated Plaintiff and recommended that he be evaluated by an ear, nose, and throat specialist. *Id.* at 14. According to Plaintiff, however, on September 25, 2019, before Plaintiff met with a specialist, Plaintiff was transferred to FSP. *Id.*

Plaintiff alleges that when he arrived at FSP, his ear was leaking brown and green fluid, so he submitted a sick-call request. *Id.* According to Plaintiff, Defendant Espino then evaluated Plaintiff and, in direct conflict to past medical advice, refused to send Plaintiff to an ear, nose, and throat specialist. *Id.* at 15. According to Plaintiff, Espino also "falsified medical records, reports and documents stating no drainage, no perforation, both ear[s] intact and

---

[3] Because this Order only pertains to Plaintiff's allegations against Centurion and Espino, the Court focuses its summary on the allegations involving these Defendants.

noted that Plaintiff would squeeze nose and blow air out of his ear which was false." *Id.* Plaintiff asserts that Espino later evaluated Plaintiff and denied Plaintiff's ear injury existed. *Id.* at 16.

Plaintiff argues that due to his continued ear pain, he submitted several additional sick-call requests and grievances asking to see a specialist, but medical denied those requests. *Id.* at 16-17. Plaintiff asserts that Espino eventually documented that Plaintiff had a noticeable ear issue and prescribed "Neomycin hydrocortisone sterile optic solution ear drops" and instructed Plaintiff to administer two drops in the affected ear two-to-three-times a day. *Id.* at 17. According to Plaintiff, however, Espino "knew or should have known that this medicine was prohibited and harmful to Plaintiff's injury." *Id.* Notably, Plaintiff asserts that when he administered the ear drops, he experienced excruciating pain, so he stopped treatment. *Id.* Plaintiff alleges that he then noticed that the pharmacy instructions explicitly state, "Do not prescribe to patients with a ruptured perforated tympanic membrane trauma." *Id.* at 17-18. According to Plaintiff, he has yet to receive adequate medical care for his ear injury. He argues that Espino's actions in denying him care and prescribing medication that exacerbated his injury amounted to deliberate indifference to his serious medical need in violation of his rights under the Eighth Amendment.

Plaintiff also seemingly alleges that Espino eventually recommended that Plaintiff see an ear, nose, and throat specialist. But, according to Plaintiff, Defendant Centurion has a custom, policy, and practice of intentionally denying ear, nose, and throat specialist evaluations to inmates like Plaintiff. *Id.* at 18. He claims this policy was the moving force behind medical's refusal to treat his ear injury. *Id.* Notably, he claims he "has been referred to an ear doctor 4x (four times)," but Centurion has denied all those referrals. *Id.* at 3. Plaintiff argues Centurion's policy and practice of denying ear specialist care amounts to an Eighth Amendment violation.

According to Plaintiff, because of Defendants' deliberate indifference, he suffers from chronic ear pain, his hearing in his left ear has diminished, and he experiences nightmares of abuse and suffers from emotional trauma. *Id.* at 3. As relief, Plaintiff seeks monetary damages and a "preliminary and permanent injunction for Plaintiff to see an ear specialist." *Id.* at 4.

### III. Defendants' Motions to Dismiss

In their motions, Defendants argue the Court should dismiss the claims against them because: (1) Plaintiff is a three-strikes litigant, as defined in the Prison Litigation Reform Act (PLRA), and 28 U.S.C. § 1915(g); (2) Plaintiff failed to exhaust his administrative remedies; (3) Plaintiff fails to state a plausible claim for relief; and (4) Plaintiff failed to comply with Florida's mandatory presuit conditions before filing a medical malpractice claim. *See*

5

*generally* Centurion Mot.; Espino Mot. Because the Court finds this action is due to be dismissed without prejudice for Plaintiff's failure to exhaust his administrative remedies, the Court need not address Defendants' other arguments.

*Exhaustion*

The PLRA requires that Plaintiff exhaust his available administrative remedies before pursuing a § 1983 claim about prison conditions. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). But Plaintiff need not "specially plead or demonstrate exhaustion in [his] complaint[]." *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" *Id.*

Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). *See also Jones*, 549 U.S. at 211. The Supreme Court has instructed that while "the PLRA exhaustion requirement is not jurisdictional[,]" *Woodford*, 548 U.S. at 101, "exhaustion is mandatory . . . and unexhausted claims cannot

6

be brought," *Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing *Jones*, 549 U.S. at 211). Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies of the institution. *Woodford*, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

*Id.* at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Id.*

In *Ross v. Blake*, the Supreme Court instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. 1850, 1862 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322-23 (11th Cir. 2007)).

7

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Plaintiff] has failed to exhaust his available administrative remedies." *Turner*, 541 F.3d at 1082. The Eleventh Circuit has articulated a two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> In *Turner v. Burnside* we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. *Id.* Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. *Id.* at 1082–83; *see also id.* at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

*Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015). And "[a] prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." *Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010) (citations omitted).

State law "determines what steps are required to exhaust." *Dimanche v. Brown*, 783 F.3d 1204, 1207 (11th Cir. 2015); *see also Jones*, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides inmates with a

8

three-step grievance process for exhausting administrative remedies. As the Eleventh Circuit has described it:

> The grievance procedure applicable to Florida prisoners is set out in § 33-103 of the Florida Administrative Code. Section 33-103 contemplates a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. *Dimanche*, 783 F.3d at 1211. Informal grievances are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden of the institution; and administrative appeals are handled by the Office of the Secretary of the FDOC. *See* Fla. Admin. Code. §§ 33-103.005–103.007. To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011, and must either receive a response or wait a certain period of time before proceeding to the next step. *See id.* § 33-103.011(4).

*Pavao*, 679 F. App'x at 824. However, the ordinary three-step procedure does not always apply. For example, a prisoner may skip the informal grievance step and immediately file a formal grievance for issues pertaining to various things, including "medical grievances" or "a formal grievance of a medical nature." Fla. Admin. Code r. 33-103.005(1); Fla. Admin. Code r. 33-103.008. If a prisoner can bypass the informal grievance step, he must typically file the formal grievance with the warden within 15 days from the date on which the incident or action being grieved occurred. Fla. Admin. Code r. 33-103.011(1)(b). A response must be provided to the inmate within 20 days of receipt of the

9

formal grievance. Fla. Admin. Code r. 33-103.006(6). "If the inmate is unsatisfied with the resolution of a formal grievance, he may appeal the grievance to the Office of the Secretary using Form DC1-303 (same form as a formal grievance)." *Jenkins v. Sloan*, 826 F. App'x 833, 835 (11th Cir. 2020) (citing Fla. Admin. Code Ann. R. 33-103.007). The grievance appeal to the Office of the Secretary must be received within 15 days from the date the response to the formal grievance is returned to the inmate. Fla. Admin. Code r. 33-103.11(c).

Here, Defendants argue Plaintiff did not exhaust his administrative remedies regarding his alleged lack of ear care because he never timely pursued an administrative appeal. Centurion Mot. at 8-11; Espino Mot. at 18-22. In support of their arguments, Defendants attach to their motions a summary printout of Plaintiff's formal grievances (Doc. 29-3 at 1-4); and three formal grievances and the warden's responses to those formal grievances (Doc. 29-4 at 1-7). They also filed a summary printout of Plaintiff's grievance appeals filed with the Secretary (Doc. 55-1).

Plaintiff seems to argue that he exhausted all of his "available" administrative remedies. He filed several grievances he submitted between July 2019 and present day. Doc. 34 at 4; Doc. 47 at 4. He asserts he filed several formal medical grievances and when officials denied those grievances, he filed timely appeals. Doc. 49 at 35. But according to Plaintiff, officials sometimes

"obstructed, impeded, interfered, [] tampered" or "destroyed" his grievance appeals, rendering his administrative remedies unavailable. Doc. 47 at 21; Doc. 49 at 35; Doc. 56.

Here, the Court finds that Plaintiff's allegations, taken as true, preclude dismissal of this action at the first step of *Turner*. *See Ross*, 136 S. Ct. at 1860; *see also Jackson v. Griffin*, 762 F. App'x 744, 746 (11th Cir. 2019) (holding disputes about availability of administrative remedies are questions of fact that can bar dismissal at *Turner*'s first step). As such, the Court will proceed to *Turner*'s second step and make specific findings to resolve the disputed factual issues related to exhaustion.

In resolving the disputed factual issues here, the Court finds that Plaintiff did not complete the administrative process before filing *this* case. Defendants do not challenge Plaintiff's efforts to file formal grievances of a medical nature directly with the warden after his September 25, 2019, transfer to FSP. Rather, their exhaustion argument is that after Plaintiff filed those formal grievances, he did not seek a timely administrative appeal with the Secretary before filing this action.

The record shows that following his September 2019 transfer to FSP and before he filed this action on February 28, 2022, Plaintiff filed three formal medical grievances about his lack of medical care for his ear injury. First, Plaintiff submitted a formal medical grievance (log # 1910-205-160) on October

11

21, 2019. Doc. 34-3 at 77. Officials denied the formal grievance (log # 1910-205-160) on November 4, 2019. *Id.* at 76. Plaintiff had until November 19, 2019, to file an appeal, however, the log of Plaintiff's administrative appeals shows he did not file an appeal by that deadline. *See* Doc. 55-1. Second, on July 19, 2021, Plaintiff filed a formal medical grievance (log # 2107-205-128). Doc. 46-4 at 5. Officials denied the formal grievance (log # 2107-205-128) on July 24, 2021. *Id.* at 4. Plaintiff had until August 8, 2021, to file an appeal with the Secretary, but the record shows he did not file an appeal by that deadline. *See* Doc. 55-1.

Plaintiff seems to argue that he tried to file an appeal for those two formal grievances (log # 1910-205-160 and log # 2107-205-128), but officials either never responded to his appeal or otherwise hindered his efforts, rendering his administrative remedies unavailable. *See* Doc. 65 at 2. But Plaintiff's conclusory assertion that his appeal grievances were being ignored or hindered does not amount to the type of intimidation that would render a grievance process unavailable. For example, Plaintiff does not allege that prison officials withheld from him administrative remedy forms. Instead, the record shows he had access to the necessary form for submitting a grievance appeal to the Secretary, because he would have used that same form to file his many formal grievances with the warden. *See Jenkins*, 826 F. App'x at 836 ("[i]f an inmate is unsatisfied with the resolution of a formal grievance, he may appeal the grievance to the Office of the Secretary using Form DC1-303 (same

12

form as a formal grievance)"). The record also refutes any allegation that prison officials engaged in threatening or retaliatory behavior that deterred Plaintiff from filing a grievance appeal with the Secretary. *See Turner*, 541 F.3d at 1085 (holding that a prison official's threats of retaliation can render grievance process unavailable if: "(1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude" from participating in the process). Indeed, his administrative appeals log shows he filed nine grievance appeals between December 2019 and October 2021, but the Secretary returned all those appeals without action. *See* Doc. 55-1 at 2. Further, even if guards intercepted his grievances and failed to respond, Plaintiff could and should have completed the grievance process by submitting an appeal when he received no response after twenty days. *See Pavao*, 679 F. App'x at 826. He did not do so. *See* Doc. 55-1.

Third, Plaintiff filed a medical formal grievance (log # 2202-205-205) about his need for medical care for his ear injury on February 22, 2022. Doc. 46-4 at 7. A few days later, before receiving a response to that grievance, Plaintiff filed his Complaint on February 28, 2022. Doc. 1 at 23. After filing the Complaint, the warden denied the formal medical grievance (log # 2202-205-205) on March 11, 2022. *Id.* at 6. Plaintiff then completed the administrative grievance process by filing a timely appeal with the Secretary (log # 22-6-

13

08669) on March 17, 2022. Doc. 47-1 at 10; Doc. 55-1 at 2. The Secretary denied the grievance appeal (log # 22-6-08669) on April 8, 2022. *Id.* at 9. To the extent that Plaintiff argues that the grievances he filed after he submitted the Complaint satisfy the exhaustion requirement, he is mistaken. Indeed, "when a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added). It is undisputed that he filed his Complaint before he completed the grievance process; and he did not exhaust his administrative remedies. For these reasons, the motions to dismiss are due to be granted on this issue.

### IV. Motion to Consolidate

On May 2, 2022, Plaintiff initiated a separate action in the Second Judicial Circuit Court in and for Leon County, Florida, by filing a Complaint under 42 U.S.C. § 1983. *See Connell v. Centurion, et al.*, No. 3:23-cv-152-BJD-JBT (M.D. Fla.). Plaintiff named four Defendants – Centurion; Espino; Coopman; and FSP Physician Assistant Ibe. *Id.* (Doc. 13). Plaintiff raised claims identical to those at issue in this case, No. 3:22-cv-269-BJD-PDB. Defendant Centurion removed the case to the Northern District of Florida on December 7, 2022. *Id.* (Doc. 2). On February 6, 2023, the Honorable Allen Winsor, United States District Judge, dismissed without prejudice Plaintiff's

14

claims against Defendant Coopman and transferred the action to this Court. *Id.* (Doc. 8).

Defendants Centurion and Espino filed a "Motion to Consolidate Related Cases Under Local Rule 1.07" (Doc. 54). According to Defendants, the allegations in this case, No. 3:22-cv-269-BJD-PDB, are virtually identical to the allegations in No. 3:23-cv-152-BJD-JBT, and thus they ask the Court to consolidate the cases. Doc. 54 at 4.

Federal Rule of Civil Procedure 42(a) permits the Court to consolidate actions involving a common question of law or fact, and consolidation is proper when it serves the purposes of judicial economy and convenience. *Young v. City of Augusta*, 59 F.3d 1160, 1169 (11th Cir. 1995). The purpose of consolidation is to avoid unnecessary cost or delay where the claims and issues contain common aspects of law or fact. *E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998). Here, however, because the Court dismisses No. 3:22-cv-269-BJD-PDB without prejudice for failure to exhaust, consolidation would not help achieve judicial economy or avoid delay or confusion. Here, consolidation serves no purpose, and thus Defendants' request is denied. Case No. 3:23-cv-152-BJD-JBT will proceed separately.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1. Defendant Centurion's Motion to Dismiss (Doc. 29) and Defendant Espino's Motion to Dismiss (Doc. 46) are **GRANTED to the extent described herein**.

2. Plaintiff's Complaint (Doc. 1) and this case are **DISMISSED without prejudice**.

3. Plaintiff's Motion for Leave to file Amended Complaint (Doc. 41); Motion to Supplement Motion for Leave to file Amended Complaint (Doc. 42); and Motion to Stay Ruling on Motions to Dismiss (Doc. 65) are **DENIED as moot**.

4. Defendants' Motion to Consolidate (Doc. 54) is **DENIED**.

5. The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 19th day of October, 2023.

_____
BRIAN J. DAVIS
United States District Judge

Jax-7

C:  Timothy Alan Connell, #T11890
    Counsel of record